Good morning, Your Honors. May it please the Court. I represent the Petitioner, excuse me, in this case, and Petitioner is seeking review of the Board's final order of removal in which the Board found him removable under Section 101A43M1 of the Immigration and Nationality Act. So where is there a final order of removal? Your Honor, the Court has jurisdiction over this case because, number one, the definition of the final order of removal is listed in INA Section 101A47A, which defines an order as a decision by a special inquiry officer that an alien is deportable or ordering deportation. So that's the first thing. And special inquiry officer here is the immigration judge, the attorney general. And secondly, Your Honor, this Court has jurisdiction because Congress in a statute, which is INA 10142B9, held that – stated that all questions of law and facts arising from any action taken or proceedings brought to remove an alien shall be in the court of appeals. It's called the zipper clause. And in this case, there is a final order in the sense that there is a determination made by the immigration judge that the Petitioner is removable on the ground, which was affirmed by the BIA. And I also like to point out that this Court has also held that the REAL-ID Act prohibits an alien to indirectly challenge a removal order under the APA in district court. Basically, the purpose behind the REAL-ID Act and Illegal Immigration Reform Act of 1996 was to bring all issues or questions of law relating to a final order in this Court. And if this Court were to say that it does not have a final order, then there would be an indirect challenge in – to an order of removability in district court, for example, or in naturalization context. And because there is a live case in controversy under Article III of the Constitution, collateral consequences flowing from a final order, this Court has jurisdiction, Your Honors. Now, as to the merits – Well, there's one other point, I guess. Isn't it true that the IJ granted a request for discretionary relief under 212C? Yes, Your Honor. In order to grant that request under 212C, you've got to have an order of removal, haven't you? That's correct. First, the immigration judge has to find removability in order for relief. And that's why I believe that based on the definition of the final order – excuse me – definition of an order of removal plus the congressional scheme of unifying all issues and questions of law in this Court, I think this Court has jurisdiction over this case. Is it – could it be as simple? Is there a precedent for this Court that's ever talked this through? Well, Your Honor, not to my knowledge. Not to my knowledge. We may have to. Yes, absolutely, Your Honor. How about any other circuit? Your Honor, I looked at cases from the Third Circuit Court of Appeals on this. There's no direct issue because this issue hardly ever comes up. That's why we posed the question, because I sat there and said, gee, I can't find anything called a final order of removal here. That's correct, Your Honor. We did have a similar case, didn't we, in Pinto? Yes. Which Pinto was not really this case, but it was a case where somebody granted asylum, and they had to have a removal order in order to grant the asylum, and so we said in Pinto, even though there wasn't an order there, nonetheless, there was an order or they wouldn't have been able to grant asylum. That's correct, Your Honor. That's correct. As to the merits of this case, Your Honor, Supreme Court in Nijuan v. the Attorney General provided a circumstance-specific approach in determining the loss element of this aggravated felony section. And in Nijuan, the Supreme Court held that the government can use any means as long as it's fundamentally fair to determine the loss element of this aggravated felony. In this case, Your Honor, we believe that the government has not been able to establish by clear and convincing evidence that the Petitioner is removable on this ground. Your client agreed to a restitution order with an amount larger than $10,000. Yes. Why isn't that enough? Your Honor, because restitution in California is not based necessarily on the loss that's tied to the conviction, the convicting count. Supreme Court emphasized that conviction. So what? The whole point is you look at the circumstances. How is this any different than Fuentes v. Lynch? Your Honor, it's different from Fuentes because in Fuentes, first of all, I'd like to point out that in Fuentes the Court said that the Board erred by looking at the Overdax, because Overdax is not the element of the crime. And maybe they did here also, but it was harmless because. Yes. But the difference here is that in Fuentes there was a pre-sentence report which incorporated the plea agreement between the parties where they said that the money laundered was more than $10,000. So there's a big difference. Here there's your client voluntarily agreed to a restitution amount larger than $10,000. And I doubt if he was planning to pay over extra money just for the heck of it. Your Honor, but the restitution, but my point is that that is exactly what the Supreme Court in Nijuan emphasized. The purpose behind the Supreme Court said that the loss has to be tied to the convicting  I mean, the convicting count. Well, it's part of the sentence for his conviction. How is that not tied? And his conviction count was conspiracy. It wasn't a discrete separate act. So he's responsible for all of the acts that were part of the conspiracy, even if he only admits to one overt act. Yes, that is true. Again, but the point is, Your Honor, in district court, for example, judges routinely make restitution determination or loss determination just for sentencing purposes. Supreme Court has held that even that is not the loss, the proper measure of loss under this aggravated felony section. Now, what would you cite in support of that proposition? Your Honor, for example, Knutson, the Seventh Circuit decision. You just told me the Supreme Court has. I thought I was familiar with the Supreme Court cases in this field. So I'm curious what Supreme Court case you're pointing to. Well, Your Honor, Nijuan cited the Seventh Circuit case in Knutson. It also cited the Third Circuit case in Alaca versus the Attorney General. So the Supreme Court case you're referring me to is which? Nijuan. Nijuan. Well, I don't know. It said what you just said. It may have cited cases that said it, but that might not be quite the same thing. Yeah. What I was trying to say was that the loss element has to be tied to the conviction, because there are many. You're right. I'm a district court judge. I have somebody who has three counts of identity theft, and they only plead to one count. For restitution purposes, I might fold in counts two and three. That won't count against the client. But if it's a conspiracy to commit identity theft and it covers all three of the discrete counts, then it is part of the crime of conviction. And I can look at the amount of restitution for the crime of conviction, which is our case here. But the conspiracy has to figure out what the purpose of the conspiracy was. What was the intent of the conspiracy? Here, there is no evidence as to what the conspiracy was. It entails, if you look at the count to which the Petitioner pled to, it just in general terms that it was conspiracy to engage in insurance fraud. Right. But it doesn't really say what exactly he did and what was the loss that resulted from that count. But your client agreed to a restitution amount, and that was presumably connected to his conviction. And, Your Honor, I'd like to point out that in California, the restitution amount is not just based on conduct that related to the conviction. It can also be based on other conduct, for example, attorney's fees and others. And also I'd like to point out, the Supreme Court said that the government has to demonstrate by clear and convincing evidence, whereas in California, it's the preponderance of evidence standard for measuring loss. So those things are not tied. In this case, I think the error was not harmless when the immigration judge, as well as the board, looked at the losses in count six in determining the loss element, because they used both count six as well as the restitution order in conjunction to find that the government had met its burden. Therefore, this was not a harmless error here. In Fuentes, it was a harmless error, as Judge Lasnik, you pointed out earlier, was because the restitution, the pre-sentence report provided clear and convincing evidence by itself, whereas here, the government's burden was based on both the restitution amount as well as the, as well as the, the count or the losses that were written in the count. I think my time is up, Your Honor. Thank you. Thank you. Thank you very much for your time on jurisdictions. You'll have a minute for rebuttal. Thank you, Your Honor. May it please the Court. Brianna Stripley on behalf of the Respondent, the Attorney General of the United States. This Court ordered the parties to be able to speak on two issues today. First is jurisdiction. The other is Fuentes' impact. I'm going to start with the jurisdiction. Obviously, I'll be addressing the jurisdictional issue first, since it's a threshold matter. So do we have jurisdiction? No, Your Honor. You do not have jurisdiction, although in your order, you do have jurisdiction. We should send you outside to see if you can reach agreement, you know. But that hasn't worked so far, so. But Petitioner's counsel is right in that the INA does define what a final order of removal is, and that's our starting point, right? So it's 1101A47A and B, which is the finality portion. So Petitioner's counsel is correct that it's defined as the order of, in this case, an immigration judge concluding that Petitioner is removable or ordering removal. Now, normally we see an order of removal, but none of that was issued in this case. We do have a finding of removability, admittedly, because otherwise there would be no necessary reason for a 212C relief unless the Petitioner was removable in the first instance. The finding is irrelevant? The finding, the board in Matter of Balderas specifically stated that a grant of 212C relief not only weighs the ground of removability, but the finding of removability as well. Matter of Balderas is 20INN decision 389, pin site at 391. It's a BIA decision from 1991, and, quote, they say a grant of section 212C relief weighs the finding of deportability, which was the predecessor. The main crux of Balderas, though, was that it doesn't expunge the conviction. So, for example, if Petitioner picked up another criminal charge later on, that this conviction could be used in finding multiple crimes involving moral turpitude not arising out of the same scheme. So it doesn't waive the conviction if Petitioner, for example, picks up an additional crime. So if we go back to this definition, we know that the grant of 212C relief weighs both the ground and the finding. And therefore, there's no final order, both on statutory definition, but also as common sense. Petitioner is not going to be removed from the country. He was granted 212C relief. What does this mean? Again, it weighs the ground and the finding of removability. It means that the immigration judge instructed DHS not to remove Petitioner from the United States. How is that different from Pinto? Again, I think it's different than Pinto because, unlike asylum, asylum doesn't waive the finding of removability, as 212C does. And so there's, under the definition of what a final order is, that wipes out either or, right? So we can either do the finding or an order of removability. And in this case, both of them are wiped out by function of 212C as mandated by the Board. And I will say that this Court affirmed the Board's decision in matter of Baldera's in, I'm probably going to butcher the name, but Molina-Amizukua v. INS, which is 6F 3rd 646. It's a 1993 case from this Court. So what if we have a new president whose last name is on a lot of towers, and he brings in an attorney general who says, these waivers are nonsense, we're going to revoke them all and remove all the people who are subject to removability? How does Mr. Ershad get a review of this underlying decision? So, again, just to back up, so for 212C relief, this is indefinite. He can travel in and out of the country. He can work. This is not going to be revoked because this was, you know, 212C relief was repealed in 1996, and Petitioner was still eligible for it based off the St. Cyr doctrine. But the idea is that Petitioner, I think what you're getting at is, is Petitioner going to be in any way prejudiced by this Court's dismissal of this case? And the answer to that is no, absolutely not. Why is that? Well, because Petitioner, and this is throughout the police, you know, the pleadings, it's throughout the administrative record, the core issue Petitioner wants is for this Court to issue a decision saying that he wasn't convicted of an ag fel. So then he can go to USCIS. Sorry, I'm moving away from the mic. Then he goes away from USCIS, goes to USCIS and gets a determination where he says, I am now not per se barred from naturalizing. So the end goal for Petitioner is naturalization. What this does is it doesn't bar Petitioner from naturalization. If anything, it would just be an advisory opinion. Petitioner can still reapply for naturalization. He could go after this Court issues its decision, go apply to USCIS. And then from the USCIS determination for naturalization, it wouldn't be binding. It seems to me that Petitioner is making the argument that this Court's ruling would be – would bind USCIS in a naturalization proceeding. The impression I got is that as long as he had this aggravated felony black mark, he couldn't get naturalized. Is that wrong? Well, it's not the black mark, right? Because I think we're talking about two separate things. It's a separate – naturalization proceedings are separate proceedings. We've got a different agency, so it's USCIS, not the Board. We've got the different burdens. In this case, it was DHS's burden. In that case, it will be Petitioner's. It's a separate proceeding altogether, so Petitioner could submit new evidence. He could potentially submit, you know, the conviction records for the other defendants in this case to prove up that he's not an ag fel. So even if this Court were to issue a decision and put it all in favor of Petitioner, right, you have jurisdiction. No collateral estoppel effect somehow? So, no, because they're not the same proceedings. They're different parties. The Board is DOJ. And this is actually, although it's not directly on point, is very similar to the issue that this case – so, for example, this Court has adjudicated an instance where Petitioner wanted to take a grant of 212C relief and take that grant to naturalization proceedings and have it bind USCIS to say, you can't find that I'm not eligible. This is a waiver, right? And you, government, waive your opportunity because you have given me this discretionary grant. And this Court, as well as the Second Circuit, said, no, no, no. These are different proceedings. What you use as your shield in removal proceedings, you can't use as your sword in deportation – or, I'm sorry, in naturalization proceedings. Okay. I have one more question, which has worried me. Yes, sir. Outside of the 212C idea, which relates to Pinto, if you look at AR-49, it seems to me that the IJ certified the order administrative return certification to the Board. And in there, he said, this Court has written a new decision denying respondents' motion to terminate and sustaining the charge of removability. Then the Board, when they affirmed, said, we affirm the IJ ordering that the order of removal is affirmed. It seems to me that even though you're saying all you're saying about here, that in this particular instance, the IJ says there's an order of removability, denied the motion to terminate, sustained the charge, and the BIA then affirmed it. Admittedly, Your Honor, with the Board's decision where it has the further ordered and then says they affirm the immigration judge's order of removal, the best we can argue is that that is harmless error. Because, again, he's not going to be removed. It was probably just done haphazardly. As we admitted, this is a very rare circumstance. The only thing he was really appealing was the finding, right? The motion to terminate, there were really no proceedings. He had been granted the relief he had requested. He's one of the lucky ones. He was – but they have to make the determination that he's in AGFEL to give him the relief. And so that's how we get there. And if anything, it's just – it's sloppy on behalf of the agency, but it's not. It may be sloppy, but the Second Circuit addressed a somewhat similar issue, and that was in Pierre v. Holder. It only happened, though, that that was about cat relief rather than this. And they said – I hate to read this to you, but if you haven't read it, Pierre v. Holder seems to come down in the same boat that we're in, given what the IJ and the BIA said, and said there was a removal order. Again, I think the same with Pinto, because we're dealing with asylum, withholding cat, that technical relief, whereas 212C in itself is a unique waiver, because it waives, as the Board held, both the finding and the definition. So this Court's jurisdiction is vested through the statutory provision, and that's 1101A47. If neither of those two provisions can be met, this Court simply doesn't have And the fact that Petitioner is not going to be removed. Moreover, he's not going to suffer any harm. He's been granted relief. There's nothing different. If he wants to get to his end goal of the naturalization proceedings and apply for this, he is more than welcome to reapply. And then he has a determination by USCIS. He has a direct appeal to the district court, which, by the way, is a de novo review of fact and law, which is pretty rare for a district court to be reviewing fact and law of an agency's decision de novo. And then, in addition to that, he can come back up to this Court if he thinks that he's been wrong. So. We've seen those cases. Okay. I thought it was also interesting that the only way we got to this issue was we raised it. Yes, Your Honor. Again. I mean, if your argument is true, why didn't I ever see it before I had to raise it? My guess is because the BIA concluded its decision by affirming an order of removal which actually never existed. That would be my guess as well, is that it served as a red herring. Then the sloppy language of the BIA caused that? And probably because this is a very rare issue that we don't see very often, and the way it was presented was extremely unique. That's, again, mya culpa for the Court having to address this in the first instance. But, again, this Court does have jurisdiction to consider its own jurisdiction, so even though it wasn't raised by the parties. Counsel, please don't refer to people as ag fel. You know, in the office, I get it, but aggravated felony or aggravated felony. My apologies, Your Honor. No problem. Inside lingo. Yes. I told you you'd have a minute. Thank you, Your Honor. On jurisdiction, I'd just like to point out that INA section 101-47A specifically says that an alien, a decision by a special inquiry officer that an alien is deportable or ordering deportation. So a person doesn't have to be, has to be ordered, deported in order for the deportation order to take place. And, secondly, I'd like to point out, Your Honor, is that this is the exact scenario Congress wanted to avoid, that different courts would have jurisdiction or the aliens would have second bite at the apple. Alien doesn't succeed. Well, we've been told you've got a second bite anyway, that your client can apply for naturalization, and if you don't get it through the executive branch, can go to the district court for no review on that subject. If that's true, why do you need us? Well, Your Honor, because it's highly unlikely that the district court will be able to grant him relief that he's seeking, because in removal proceedings where the government has the burden by clear and convincing evidence, if the petitioner was not successful in removal proceedings, it's highly unlikely that in naturalization proceedings, when he has all the burden, that he would be successful. But I'm not sure how our involvement changes that. Your Honor, your involvement will change because the BIA decision, even though the district court is not bound by that, but that still can be used by the district court to say that the Attorney General was right. Okay. Thank you, Your Honor. We thank both of you for your help in working through what is an unexpectedly complicated thicket. The case just argued is submitted. Thank you.
judges: Lasnik, Clifton, Smith